HERRMAN *v.* MALEY *et al.*

(En Banc. Feb. 23, 1931. Suggestion of Error Overruled April 6, 1931.)

[132 So. 542. No. 28816.]

Watkins, Watkins & Eager, of Jackson, and Brunini & Hirsch, Thames & Thames and W. W. Ramsey, all of Vicksburg, for appellant.

540

Green & Green, of Jackson, for appellees.

Argued orally by **Pat H. Eager**, for appellant, and by **Marcellus Green**, for appellees.

**Anderson, J.**, delivered the opinion of the court.

Appellant brought this action in the circuit court of the first district of Hinds county against the appellees, C. E. Maley, Sr., his wife, Mrs. Elizabeth Maley, and their minor son, Richard Maley, to recover damages for an injury received by appellant caused by an automobile driven by Richard Maley running into another automobile under which the appellant was situated at the time trying to extinguish a fire which had broken out under it. As a result of the collision the appellant was seriously, and the evidence tended to show permanently, injured. The grounds of recovery were the alleged negligence of Richard Maley, in driving the car, and of appellees, his parents, in permitting him to drive

the car, because they knew he was a reckless and dangerous driver. The court directed a verdict on the question of liability against Richard Maley, and the jury returned a verdict against him in the sum of six thousand five hundred dollars, from which judgment no appeal is prosecuted. As to the appellees C. E. Maley, Sr., and his wife, the court directed a verdict and judgment in their favor, and from that judgment the appellant prosecutes this appeal.

The declaration was in two counts. In the first count, the appellant sought to hold the appellees liable on the family car doctrine, and, in the second count, upon the ground of Richard Maley's negligence, in conjunction with appellees' negligence in permitting their son, Richard, a minor, to drive their car knowing that he was a reckless and dangerous driver.

Appellees' demurrer to the first count of the declaration was sustained, and trial was had on the second count and the plea of general issue thereto.

Richard Maley was about seventeen years of age at the time of the injury, and was living in the home of appellees, his parents. At the time of the accident he was driving a Dusenberg car, which, together with a Lincoln car, was owned by the appellees. The appellee C. E. Maley, Sr., testified that he bought both of these cars; that he gave the Dusenberg car to his wife, but that on the very day of the accident he had bought a new car for his wife and had taken over the Dusenberg car for his own use.

The evidence for the appellant was to the effect that young Maley was a reckless and dangerous automobile driver, and had that reputation in the community where the family lived, and for that reason the appellees' liability insurance on their two cars had been canceled.

The appellees, as witnesses in their own behalf, testified that they did not know their son was a reckless au-

tomobile driver, but that on account of the prior accidents they had forbidden him to drive either of their cars, and that at the time of the injury complained of they were not aware that Richard Maley, their son, was out in the Dusenberg car. However, George Gowdy, a friend and companion of young Maley and about his age, testified that on the night of the accident causing the appellant's injury he had arranged to spend the night in the Maley home as their guest; that the accident occurred about 9:30 at night on the Clinton and Jackson road; that he and young Maley had been out in the Dusenberg car earlier in the night returning to the Maley home in Jackson about 8:30. That on the first trip they left about 6:30 or 7:00 o'clock P. M.; that both the appellees were present when they went on the first trip; that young Maley told the appellees that they were going riding in the car, to which the appellees gave their assent. That when they returned from the first trip to the Maley home both the appellees were present and saw them when they returned, and that the father then said to them, "Don't take it out (meaning the Dusenberg car) because we are going to the picture show;" that neither of the appellees made any objection to young Maley and the witness going out in the car, but merely requested that they not use it again that night because appellees wanted to use it for the purpose of going to a picture show. The testimony of the witness Gowdy tended to show further that he and young Maley had frequently gone out riding together sometimes in the appellees' Dusenberg car and sometimes in their Lincoln car, and that the appellees knew these facts.

On cross-examination, the appellee, Mrs. Elizabeth Maley, testified in part as follows:

"Q. Had your son, Richard, been driving a car before this accident—this last accident—the one when he struck

the Herrman boy? A. He had been driving off and on, but not a great deal, because he has been away at school so much he didn't have an opportunity to drive.

"Q. I asked you how long he had been driving a car? A. From the time he was sixteen he drove some, but I couldn't give you the exact amount of time.

"Q. Did he drive the Lincoln car with your acquiescence and permission? A. Well, yes, he drove to some extent."

There is no question as to Richard Maley's negligence. The evidence showed, without conflict, that the appellant's injury was caused by young Maley's negligent driving. The court, therefore, was justified in directing a verdict against him. The evidence for the appellant went further, as above stated, and tended to show that he was not only a negligent driver of a car, but was a reckless and dangerous driver to the traveling public, and that the appellees knew he was such.

The appellant's contention is that this evidence made a question for the jury, notwithstanding the evidence showed, without conflict, that the appellees had forbidden their son to take the car out on the particular trip during which the accident occurred. On the other hand, the appellees' position is that, conceding that their son was a reckless and dangerous driver, known to them to be such, nevertheless, they are not liable for appellant's injury, because at the particular time of the accident their son was using the car contrary to their request.

When an automobile is driven by a minor child with the permission of its parents, and such child is a reckless driver, and by reason thereof injures another, and his incompetency is known to the parents, the latter are liable for the injury upon the ground of negligently permitting the child to operate the car. Parents have the right to the services of their minor children and are charged with their discipline and control, and must suf-

fer the consequences of permitting them to drive an automobile when they know, or with reasonable care should have known, of their incompetency. Anderson v. Daniel, 136 Miss. 456, 101 So. 498; Huddy on Automobiles (5 Ed.), section 662, page 863. The Anderson case was an action against a father for an injury received through the negligence of his minor son in driving an automobile. It was sought to hold the father liable upon the ground that he negligently permitted his minor son to drive a car knowing that he was a reckless driver. No witness testified in that case that the father knew at the time of the injury that his son was operating the car, nor that he knew that his son was a reckless driver, but the evidence for the plaintiff was to the effect that the son was a member of his father's household; that he was often seen by the neighbors driving his father's car, and that the son was a reckless driver, and had that reputation in the neighborhood where his family resided. The court held that the evidence was sufficient to go to the jury on the question whether or not the father knew, or should have known, that his son was unfit to drive the car.

In determining this question, what took place between the appellees and their son with reference to the particular trip during which the injury occurred is not controlling, but it is the whole course of their conduct in reference to the use of the cars by their son that controls. It is true that an automobile is not a dangerous instrumentality per se, but it is a highly dangerous instrumentality in the hands of a reckless driver. Parents who know, or who, with reasonable care, should know, that their minor child is such a driver, are due, so far as they reasonably can, to protect the traveling public against injuries on account of his incompetency. This obligation is not satisfied by the parents forbidding the child to use their automobile on a particular trip; they should forbid its use on any occasion, and use reasonable

means to enforce their injunction. If this course had been pursued, the injury here complained of might not have occurred. If the testimony given by George Gowdy was true, the appellees' son was in the habit of driving both of the family cars with their full knowledge and consent. It appears to be a reasonable inference that, except for that practice, appellees' son would not have disobeyed their instructions and taken the car out on the trip during which the injury occurred.

The appellees contend that the directed verdict in their favor was justified because the second count of the declaration on which the case was tried stated no cause of action. This contention is based on the assertion that it embodied the family car doctrine, which is not recognized by this court. The second count does set out that the car which young Maley was driving was owned by the appellees, and was a family car, used for the pleasure of the members of the family, but it goes further and makes the allegation that the son "was generally known, and to his parents, the owners of said Dusenberg car, as a careless, negligent and reckless driver or operator of motor vehicles, and that the injuries to the plaintiff, as hereinafter set out, were due to same." We are of opinion that the appellees' contention in this respect is unsound: that the second count of the declaration stated a case under the principles laid down by this court in Anderson v. Daniel, supra. The allegation that it was a family car was unnecessary. The gist of the count is that it was a car under the control of appellees which they permitted their son to drive knowing of his unfitness for that purpose.

The appellees further contend that the directed verdict in their favor was proper because the declaration averred joint ownership of the car in the appellees, while the evidence showed, without conflict, that there was no joint ownership, but that the appellee C. E.

Maley, Sr., owned the Dusenberg car which their son was driving when the injury occurred, and that the appellee's wife owned the Lincoln car. If it be material as to who was the owner of the Dusenberg car, the evidence tended to show the following facts: That both cars had been bought and paid for by the appellee C. E. Maley, Sr., for family and business purposes, and that he assigned the Dusenberg car to his wife for her use, and usually used the Lincoln car himself. He testified however that on the day of the injury to the appellant there was some sort of change had in the use of the car, on which subject he testified as follows:

"Q. Whose car was that he took out that night? A. It was my car. I inherited it that day. I bought Mrs. Maley a new car and took her old one (meaning the Dusenberg car).

"Q. The same day of the accident? A. Yes.

"Q. It had been Mrs. Maley's prior to that day? A. Yes."

However, the ownership of the Dusenberg car was immaterial. The declaration charged that it was owned and controlled by both the appellees, and the evidence tended to show that both cars were used by young Maley with the knowledge and consent of the appellees. On this subject the witness, George Gowdy, testified in part as follows:

"Q. Tell the court whether you had had that car out that night previous to the time of this accident? A. Yes sir, we took it out and brought it back, and Mr. Maley told us to leave it there, he was going to the picture show in it.

"Q. He told you to leave it there he was going to the picture show in it? A. Yes sir, and we forgot about it and took it anyhow.

"Q. What did you say to Mr. and Mrs. Maley, if anything, on the trip before that when you went out? A. When do you mean?

"Q. What time was it you came back in? A. Around eight-thirty I imagine.

"Q. What time had you gone out just before that in the car? A. About six-thirty or seven.

"Q. Were Mr. and Mrs. Maley present when you left then? A. Yes sir.

"Q. Did you tell them where you were going? A. Told them we were going riding at first, and when we brought it back they told us to leave it there.

"Q. The first time what did they tell you with reference to whether or not you could use the car? A. They told us we could use it the first time.

"Q. And the second time Mr. Maley, said, 'Don't take it out because we are going to the picture show?' A. Yes sir."

As above stated, the evidence tended to show that both the appellees exercised control over their son and his use of both the family cars. And there is nothing whatever in the record to show that there was any difference between the appellees in the exercise of such control. In other words, the evidence tended to show that, so far as the use of the cars by their son was concerned, there was no disagreement between his parents, and that each of them exercised equal authority and control over their son and the use of the cars by him.

If it further be true, as the evidence tended to show, that the appellees knew, or with reasonable care could or should have known, that their son was a dangerous and reckless driver of automobiles, then the ownership of the particular car he was driving is wholly immaterial. To illustrate, a son is in the habit, with the knowledge and consent of his parents, of borrowing a car from a neighbor and driving it. The parents know of the unfitness of the son to drive a car. They take no steps to prevent his borrowing and using the car. Some one is injured through the negligent driving of the car

by the son. Under the law, the parents are liable for such injury on the ground of their negligence in not making reasonable efforts to prevent their son from borrowing and using the car. Parents owe such a duty to society and to the traveling public, and a failure to exercise it renders them liable as joint tort-feasors, and such liability is both joint and several.

Reversed and remanded.

**Cook, J.**, delivered a concurring opinion.

I am not in accord with some of the views expressed in the majority opinion as to the extent of the liability of parents for injuries caused by an automobile driven by their minor son, who is known to be a reckless and dangerous driver, but I concur in the result reached on the sole ground that, as stated in the majority opinion, the evidence tended to show that the appellees exercised joint control over their son and the automobile, and the use thereof by their son, and that they knew, or by the exercise of reasonable care could or should have known, that their son was a reckless and dangerous driver of automobiles. Upon this evidence, as well as the evidence bearing upon the question of whether or not the appellees exercised reasonable care or diligence to prevent their son from using the automobile which caused the injury, I think the cause should have been submitted to the jury.

**Judge McGowen** requests me to say that he concurs in these views.

**Smith, C. J.**, delivered a dissenting opinion.

The liability of the appellees is placed in the opinion in chief on two grounds: First, that rule of the common law, on which this court acted in Anderson v. Daniel, 136 Miss. 456, 101 So. 498, and which is thus stated in

Am. L. Inst. Restatement L. of Torts (tent. draft No. '5), section 260: "One who supplies, directly or through a third person, a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to . . . others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them." And, second (as will appear from the last paragraph of the opinion in chief), that a parent who knows that his child is an incompetent and reckless driver owes to the public the duty of restraining it from driving an automobile, and in default thereof, would be responsible for an injury inflicted by negligent driving by the child of an automobile supplied it, not by the parent, but by another.

The evidence discloses that the automobile was purchased by C. E. Maley for use by his wife.

If Richard Maley was driving the automobile with the consent of his parents, on the occasion in question, and the fact, if such it is, that he was an incompetent and reckless driver was known to them, I will assume, for the purpose of the argument, that both of them would be responsible for the tort committed by him on the first ground of liability hereinbefore set out.

Both Mr. and Mrs. Maley testified that Richard had been forbidden to drive the automobile, and that no permission to drive it had been given him on the occasion in question.

The appellant's evidence is to the effect that C. E. Maley permitted Richard to drive the automobile on the afternoon preceding the night of the commission of the tort here complained of, but that the automobile had been returned by him to the Maley residence, and he was then told not to drive it, but to leave it there.

· It appears from the evidence, therefore, without conflict, that young Maley was not driving the automobile with his parents' consent when the injury here complained of was inflicted, which consent, either express or implied, is necessary to impose liability on them because of having supplied him with the automobile. That a reason was given for directing him not to drive the automobile on that occasion, which was temporary in its nature, is, in my judgment, of no consequence.

No authority is cited in support of the second ground of liability hereinbefore set out, and none has come under my observation. It finds no support in Anderson v. Daniel, supra, for there the defendant was the owner of, and permitted his son to drive, an automobile knowing he was an incompetent and reckless driver.

This court has repeatedly held: "The parent of a minor child cannot be held liable for the tortious acts of the child on the mere ground of the parental relationship, but that the parent is responsible only on the same ground that he is for the torts of other persons." Dempsey v. Frazier, 119 Miss. 1, 80 So. 341, 342; Howell v. Norton, 134 Miss. 616, 99 So. 440. In Dempsey v. Frazier, it was said: "There are some exceptions to this general rule not necessary to be noticed here by us. These exceptions are stated in section 2269 of Labatt's Master and Servant, vol. 6 (2 Ed.)." It is there said: "One of the exceptions to the general rule stated in the preceding section is that a father may be held responsible for a wrongful act committed by his minor child, if his own conduct in the premises was such as to render him a principal tort-feasor, or, in other words, if his personal fault was a proximate cause of the injury complained of. Liability in this point of view is predicable whenever one of the following situations is established." Three such situations are there set forth, none of which exist here, and all of which seem to be such as would impose

liability without reference to the relationship of parent and child. The fourth exception there stated is, ''That the father was negligent in respect of having omitted to take such precautions as the circumstances indicated to be proper for the purpose of preventing commission of the tort.''

In most of the cases cited in support of this text the parent was sought to be held responsible for a tort committed by a young child on the parents' premises, or with an instrumentality given the child by the parent, or left by him in such a place that the child had easy access to it. No case has come under my observation except where very young, or mentally incompetent, children were involved, where a parent has been held responsible for a tort committed by his child solely on the ground that he was negligent in not prohibiting the child from doing the act which resulted in the commission of the tort.

Richard Maley was seventeen years old, and, whatever the rule in this connection would have been had he been so young as to require the constant supervision and control of his parents, the rule cannot, and I do not understand the authorities to hold that it does, have any application here.

**Ethridge, J.**, delivered a dissenting opinion.

I dissent from the conclusion reached by the majority. I think the learned circuit judge was entirely correct in his ruling throughout the case. There was certainly no theory upon which a judgment as against Mrs. Maley could be sustained. The husband is still the head of the family and has full control and custody of the minor children so long as the husband and wife are living together; he is still entitled to the household services of the wife, and the statutes fully emancipating women have not displaced the husband as the head of the household

under the circumstances where families are living together. See Brahan v. Meridian Light & Ry. Co., 121 Miss. 269, 83 So. 467. The court, in the case of Anderson v. Daniel, 136 Miss. 456, 101 So. 498, went to the utmost limit which the court can rightfully go in holding liability, but it is a far cry from the Daniel case to the present case. In the last case a father was held liable for damages resulting from a collision between a car driven by his minor son and another person, where the accident was a result of the negligence of the minor son. The liability was upheld upon the theory that the proof showed that the father habitually permitted the son to drive his automobile with knowledge that he was a reckless and dangerous driver. It is true that in that case the father made a denial that he had ever consented for the son to drive the car, but the fact was notorious that the son had driven the car publicly on numerous occasions where the father must have had knowledge of his driving. It was also firmly established that the son was, not only a reckless driver, but was known throughout the community to be such. There was no expressed prohibition in that case of the use of the car on the occasion in which the collision happened. It is a part of the duty of a father to provide reasonable conveniences and entertainment for members of his family. Where a father does furnish a car to his wife and minor children and permits them to use it, they are about his business whenever they are using it with his consent and permission. In such case the driver of the car, if a minor, is a servant of the father and about the business of the father, although he is driving for his personal pleasure alone. But, in the present case there was an express prohibition against the son taking the car on the particular occasion on which the injury occurred. This is established without dispute, and no inference from testimony can be reasonably drawn that would warrant the conclusion that

that father or mother knew the son was taking the car or that they had consented thereto. The plaintiff's testimony shows conclusively that Mr. Maley expressly prohibited his son from taking the car on that particular occasion, and it is expressly proved by plaintiff's witness that young Maley and the witness took the car, having temporarily forgotten the prohibition, without any kind of permission whatever. Under such circumstances it seems to me that, even by the wildest stretch of the imagination, consent could not be implied.

The whole doctrine of the liability of the father for the torts of his minor child is placed upon the principle of master and servant or principal and agent, and, unless the child is in the services of the father and about the business of the father at the time of the tort, there is no liability by the father for the tort of the child. This is well established both in decisions of this state and at common law. In the case of Winn v. Haliday, 109 Miss. 691, 69 So. 685, this court dealt with the question for the first time. There it was held: "As a general rule a father is not responsible for the torts of his minor son unless the latter bore to the former the relation of servant to master in the commission of the act from which the injury resulted." It was also held: "Where at the time an injury occurred from the negligent driving of an automobile a minor son was engaged in the discharge of the duty that had been imposed upon him by his father of driving the automobile when used for the convenience or pleasure of himself or the members of his family, the relation of master and servant existed between the father and the son, and the father was liable in damages for the negligent driving of the automobile by his son;" and that: "Where a father entrusted his son with an automobile under such circumstance as made the son his servant in the management of the automobile, the father was liable for the negligence of the minor

son, whether he had actual knowledge and information that his son was a careless, reckless and negligent driver or not."

In the case of Woods v. Clements, 113 Miss. 720, 74 So. 422, L. R. A. 1917E, 357, it was held: "Where defendant, a member of a real estate firm which owned an automobile, allowed his family to use the car when it was not necessary for his business, and his adult daughter without his express consent took the car for a pleasure trip on which trip she collided with the car of plaintiff, in such case the daughter was not the servant of defendant in operating the car and he was not liable for her negligence." In the course of the opinion in this case Judge STEVENS, writing the opinion, said: "It is elementary that the father has a right to the services of his minor son; a right, to a large extent, to control his actions or movements. It may be conceded that, if the father supplies his family with an automobile to be used for the pleasure and entertainment of the entire family, he may be held liable for the negligent operation of the car by one of the minor children selected to run or operate the machine. If the father should turn the car over to a child inexperienced in driving or incompetent to handle so powerful a machine, he might be liable upon another theory. Each case must turn upon its own peculiar facts. The authorities are in accord that an automobile is not per se a dangerous agency. . . . Responsibility in this case, then, turns upon the negligence of the driver and the further and important inquiry whether the driver could be regarded as a family chauffeur or servant at the particular time of the accident. It appears that she was on no mission for her father, and the proof fails to show that the father even knew his daughter intended to use the car on the pleasure trip, here marred by an unfortunate accident. The proof, in our judgment, fails to establish the relationship of master and servant."

Judgment of the plaintiff in that case was reversed, and on suggestion of error it was vigorously contended that the court was in error, and the family doctrine was contended for, but such contention was denied by the court. It was there held: "To make a person liable in damages for injury inflicted in the operation of an automobile, first, the relation of master and servant must exist, and second, the car must have been used at the time of the injury in the course of the master's business."

In Dempsey v. Frazier, 119 Miss. 1, 80 So. 341, 342, it is held: "The general rule of the common law is that the parent of a minor child cannot be held liable for the tortious acts of the child on the mere ground of the parental relationship, but that the parent is responsible only on the same ground that he is for the torts of other persons. . . . If the relationship of master and servant existed at the time of the tortious act of the child and the act was done in the course of this employment, then the parent would be held liable because of the doctrine of respondeat superior." It was further held in that case that, "where a father bought an automobile and gave it to his minor son, who had been practically emancipated and who operated the car for hire. In such case, where it did not appear that the son was a negligent driver, when the car was given to him, the father was not liable for the torts of the son in the operation of the car, since no relationship of master and servant existed between them."

In the case of Martin Bros. v. Murphree et al., 132 Miss. 509, 96 So. 691, it was held: "Where a boy sent by his father to cut corn stalks on his father's farm thoughtlessly and carelessly strikes a match, from which dry grass is set on fire, and the fire spreads to the premises of another, and burns hay, etc., the father is not liable for the loss, where the fire was not necessary or proper in the employment of the boy, but was wholly discon-

nected with his employment. To make the father liable, the act must be within the scope of the employment of the boy." In that case the court in its opinion said: "The boy, in performing the work assigned him by his father, is the servant of the father, and the relation of master and servant exists. The parent is liable for acts done by the minor within the scope of his employment to the same extent that the master would be for the acts of his servant, but no further. Under the proof in this record we think it is clear that the boy, in striking the match, was not acting in the scope of his employment. It is entirely disconnected, and has no relation to the business of the father. It was not necessary or proper for him to strike the match for any purpose of his task; consequently the father is not liable for his act in so doing."

In Howell v. Norton, 134 Miss. 616, 99 So. 440, it was held that: "Although the general rule is that the father of a minor child cannot be held liable for the tort of the child merely on the ground of parental relation, still, if the father authorizes or ratifies the tort, he is liable therefor."

It runs through all of these cases that to make the father liable for the torts of his minor son the relation of master and servant must exist, and the son must at the time be engaged in the scope of his employment, or else the father must have directed the act to be done or have subsequently ratified it. Liability has no other legal basis in any state or country where the common law prevails unmodified by statutory provisions. In some states the statutes have modified the common law by special enactment. In one state the civil law prevails upon this question, and under the civil law the father was liable for torts of his minor child. The common law is in accord with the Mississippi cases above quoted.

In 20 R. C. L. 627, section 33, it is said: "It has been shown in a previous article that infants, even those of tender age, are liable in a civil action for torts committed by them. Conversely, parents are not liable for torts committed by their minor children without participation in the fault by the parent. There are several jurisdictions in which the common law rule has been changed by statutes, based on the civil law, which makes the parent liable for all torts committed by his minor children under his control. . . . It is not enough to make the father liable that he knew that his child was heedless or vicious. But the father is liable if he was himself guilty of negligence, as by allowing a young child to have a loaded gun or pistol, directing the son to frighten trespassers by firing a gun, permitting an imbecile child, who had set other fires, to have matches, or sending a boy known to be a reckless rider on an errand on a horse known to be unruly. He is liable, however, only for his own fault, not for that of the child. To prove his own negligence, evidence is admissible that he knew of the son's former reckless conduct. The same liability may attach, though the son be of age, if he is insane or of feeble mind, and the father had such knowledge of his condition as should have warned him of the danger."

In 46 C. J., p. 1329, it is said: "Under the civil law and under statutes in some jurisdictions, based thereon, a parent is liable for the torts of his minor child. But at common law it is well established that the mere relation of parent and child imposes upon the parent no liability for the torts of the child, and this rule applies to a stepparent. The parent may be liable, however, where the child's act is done as the parent's agent or servant, or where the parent's negligence makes the injury possible. Where a parent authorizes the child to act as his agent or servant in any matter, he is liable for the torts of the

child committed in the course of the employment, but not for acts which are not within the scope of his authority or employment. This liability does not grow out of the relation of parent and child, but is based upon the relation of principal and agent, or upon that of master and servant, and is governed by the rules applicable to such relations. Authority to do the act which resulted in the injury may be derived from the parent's actual presence, or from his express or implied direction, or from a previous course of conduct; and if a father knows that his minor child is committing a tort and makes no effort to restrain him, he will be deemed to have authorized or consented to its commission so as to render him liable.''

In volume 10 of L. R. A. (N. S.) 933, there is a case note appended to the case of Broadstreet v. Hall, in which the rule of liability is fully discussed and cases cited. Among other things the editor of the case note says: ''The unquestioned general rule at common law is that a parent is not liable to respond in damages for the independent negligent or tortious act of his minor child merely by reason of that relation, unless it appears that the parent directed or counseled the wrongful act, or subsequently ratified it; or that the minor, at the time of committing the tort, was acting as the agent or servant of the parent, and the wrongful act was one within the scope of such employment. It may be said, however, that, by codes and statutes adopted in some jurisdictions, the parent is liable for all tortious acts of his minor children.'' The editor cites Ritter v. Thibodeaux (Tex. Civ. App.), 41 S. W. 492, as follows: ''At common law the father is not liable for the torts of his child, committed without his knowledge or authority, express or implied. Such a case would have been upheld by the civil law, under the operation of which the child occupied the position almost of a slave, but has never been per-

mitted wherever English law has shaped statutes and decisions. The rule generally followed in America is that the father is not liable in damages for the torts of his child, committed without his knowledge, consent, participation, or sanction, and not in the course of his employment of the child.'' It is further said: ''A father is not liable for torts of his minor child solely upon the ground of that relationship. [Citing many authorities.] The common-law rule of the parent's nonliability for the torts of his minor children seems to be well recognized in England, although but two cases can be found in which the courts have been called upon to determine the question.''

The Missouri court has held that it is not enough to make the father liable that he knew the child was heedless or vicious. See Baker v. Haldeman, 24 Mo. 219, 69 Am. Dec. 430; Paul v. Hummel, 43 Mo. 119, 97 Am. Dec. 381. The general subject is further dealt with in a case note to 74 Am. St. Rep., page 801; Meers v. McDowell, 110 Ky. 926, 62 S. W. 1013, 53 L. R. A. 789, 96 Am. St. Rep. 475.

We have no statute regulating the subject in Mississippi, and Mississippi is a common-law state. It will therefore be seen from an examination of the authorities that, in the absence of a statute, there is no liability under the common law, except as stated in the foregoing authorities. The majority seem to ignore the common law and follow the civil law, although the civil law has never been adopted in this respect in this state. Pothier, in his work on obligations, as quoted in the note of 10 L. R. A. (N. S.) page 933, says: ''The doctrine that fathers and others shall be responsible for the acts of children under their care, which it was in their power to prevent, appears highly reasonable; but I am not aware of any case in which it is adopted in the English law.'' Thus both Pothier and the Texas Court of Civil Appeals

state that there is no case holding the father liable for the act of his child, except as above stated. Therefore it seems to me that the majority opinion is merely personal opinion clothed with the solemnity of law. It is a dangerous thing to assume to mold the law to suit one's own opinion or what should be the law, or what might constitute justice in the absence of law. I do not think there is any basis of liability in the present case, and think that the judgment of the court below should be affirmed.