PETERMANN, et al. *v.* GARY.

Division A. Jan. 2, 1951.

No. 37721 (49 So. (2d) 828)

Henry & Barbour and Lotterhos & Dunn, for appellants.

440

John S. Holmes, for appellee.

**Kyle, J.**

Appellee Marcel Gary, who is now Mrs. Marcel Gary Simmons, plaintiff in the court below, brought suit in the county court of Yazoo County against appellants, W. H. Petermann, W. C. Petermann and Mrs. W. C. Petermann, partners operating a construction business under the firm name of Petermann Brothers, and Walter Foster, all defendants in the court below, for damages for personal injuries sustained by the appellee in an automobile wreck which occurred on U. S. Highway 49W immediately west of Wolf Lake bridge near Yazoo City on the night of May 9, 1948.

The plaintiff at the time of the accident was driving a jeep belonging to Harry Simmons, her fiance, who was riding in the jeep with her, on Highway 49W and was traveling from Louise, Mississippi, to Yazoo City, and when she came within a short distance of the Wolf Lake

bridge near Yazoo City, the defendant Walter Foster, who was approaching from the opposite direction, drove a heavy welding truck which belonged to the defendants Petermann Brothers, against the jeep, knocked the jeep off the highway and inflicted serious bodily injuries upon the plaintiff. The accident occurred about 11 o'clock on Sunday night. Foster was traveling about 40 or 50 miles an hour, and the jeep was traveling about 20 or 25 miles an hour. The truck was a heavy one, a one-half ton International truck with welding equipment on the back and weighed approximately 2,000 pounds. According to the plaintiff and Simmons, when the truck was about 50 yards away from the jeep it started angling across the highway toward the left and at the point of collision the truck was over the center-line and the jeep was practically off of the highway. The truck struck the jeep on the left side behind the front light. The testimony of the plaintiff and Simmons was to the effect that the truck did not dim its lights, but there is no contention that the plaintiff was blinded by the truck lights. Foster claimed that he was blinded by the jeep lights. After the truck struck the jeep and knocked it off the highway, the truck continued along its course down the highway until it ran off the highway on the left side and across the road-ditch into a clump of bushes where it turned over about 100 yards from the place where the wreck occurred.

When the truck struck the jeep the plaintiff was thrown out of the jeep and sustained severe bodily injuries and severe nervous shock. The injuries included a fractured pelvis and a gash on the lower part of the leg which left a deep scar.

Foster at the time of the accident was employed by Petermann Brothers as a welder. He had been employed by Petermann Brothers for a period of three or four years and during the last eighteen months immediately preceding the accident Petermann Brothers had furnished him a truck, with welding equipment mounted upon it, which he used in connection with his work, and which he

kept in his possession while he was on duty and while he was off duty. It was this truck that he was driving at the time of the accident. Foster testified that at the time the accident occurred he was on his way to Carey to see his wife. Although there is testimony in the record to show that Foster was not supposed to use the truck for out of town trips without special permission, except for out of town trips made by him in connection with his master's business, the record shows that he used the truck, with Petermann Brothers' knowledge, for his own personal uses, while he was off duty, and was regularly seen driving the truck about town at night and on Sundays.

The case was tried by a jury in the county court and a verdict was rendered in favor of the plaintiff for the sum of $3,000, which was the full amount sued for. Judgment was entered upon the verdict against all of the defendants for the sum of $3,000. A motion for a new trial was overruled, and an appeal was taken to the circuit court. The circuit court affirmed the judgment of the county court. An appeal was then taken by Petermann Brothers to this Court. Walter Foster did not join in the appeal.

The appellants assign as errors on their appeal to this Court the following: (1) that the trial court erred in refusing to grant a peremptory instruction for the defendant Petermann Brothers, (2) that the verdict was against the overwhelming weight of the evidence, (3) that the trial court erred in declining to declare a mistrial because of the testimony in reference to Petermann Brothers' liability insurance, and (4) that the verdict is excessive and the result of passion and prejudice.

The plaintiff in her declaration set forth two theories of liability as the basis of her cause of action against Petermann Brothers, first, that at the time of the accident Foster was employed by Petermann Brothers as a welder and that the relation of master and servant existed between them, that Foster was driving the welding truck

444

in the course of his employment, while engaged in his master's business, and that Petermann Brothers were legally liable to the plaintiff for the injuries that the plaintiff had sustained as a result of the negligence of their servant; and, second, that Petermann Brothers were guilty of negligence, which directly and proximately contributed to the accident because, on the occasion complained of, they permitted Foster to use, operate and drive their truck at a time when they knew, or by the exercise of reasonable care should have known, that Foster was a person who habitually and customarily drank intoxicating liquors, and when under the influence of intoxicating liquors was a reckless and incompetent driver, and that he was likely to drive the truck while under the influence of intoxicating liquors and to cause injury and bodily harm to other persons using the highway.

The first theory was abandoned by the plaintiff when the trial was begun, and the case was tried on the second theory, which is based upon the legal principle set forth in the opinion of this Court in the case of Levy v. McMullen, 169 Miss. 659, 152 So. 899, 900, wherein the Court said that ██ █ ''when the owner of an automobile permits its use by a person known to the owner to be a reckless or incompetent driver, or where by the exercise of reasonable care the owner could or should have so known, the owner is liable for all such injuries as are the natural and probable consequences of the recklessness or incompetency of the said driver while using the automobile so furnished''. That principle had been announced in the earlier cases of Anderson v. Daniel, 136 Miss. 456, 101 So. 498, and Herrman v. Maley, 159 Miss. 538, 132 So. 541. And in Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318, 321, this Court plainly declared that ██ █ a drunken driver is an incompetent driver, and that when an owner furnishes an automobile to another whom the owner knows, or from facts known to him should know, is likely to be drunk while driving, the

owner is responsible for any injury which results as a proximate consequence thereof.

The broad principle upon which this liability is founded has been tersely and accurately stated as follows: ''One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them.'' Slaughter v. Holsomback, supra.

Appellant's first contention on this appeal, as stated above, is that the trial court erred in refusing to grant a peremptory instruction that the jury return a verdict for the defendants Petermann Brothers. This Court must therefore determine whether there was sufficient evidence from which the jury could have found: (1) that Walter Foster at the time of the accident was under the influence of intoxicating liquor, and that the fact that he was under the influence of intoxicating liquor constituted a contributing proximate cause of the accident; (2) that the defendants Petermann Brothers furnished the truck to Foster and permitted him to use the same when they knew, or from facts known to them should have known, that he was an excessive user of intoxicating liquors, that he was an incompetent driver when under the influence of intoxicating liquor, and that he was likely to drive the truck while under the influence of intoxicating liquor.

██ █ From a careful reading of the evidence in this case, we think that there was sufficient evidence from which the jury could find that Foster was an excessive user of intoxicating liquors and was under the influence of intoxicating liquor at the time of the accident, and that the fact that he was under the influence of intoxicating liquor was the cause of the accident.

Foster testified that there was nothing wrong with the truck on the night of the accident, that there was no mechanical difficulty, and that he had good lights and good brakes on the truck. All of the evidence shows that at the time of the accident Foster was driving the truck on the wrong side of the road, that he ran into the jeep when the jeep was almost entirely off of the paved part of the highway, that after striking the jeep his truck continued its course approximately 100 yards further down the highway and did not come to a stop until after it had rolled off the highway and into a clump of bushes. These facts indicate that he was an irresponsible driver at the time of the accident. Several of the witnesses who saw Foster during the next hour after the accident had occurred stated that he appeared to be under the influence of intoxicating liquor. These witnesses included Ed Hampton, who picked Foster up on the highway after the accident and carried him into town, and Ernest Evans, the highway patrolman who picked Foster up a little later and drove him back to the scene of the accident. Evans testified that Foster's condition indicated that he had been drinking intoxicating liquor, and that his condition was such that it was unsafe for him to drive an automobile.

We also think that there was sufficient evidence to warrant the jury in finding that Petermann Brothers knew, or from facts known to them should have known, that Foster was a person who habitually drank intoxicating liquors, and that at times he drank intoxicating liquors to excess, and that he was a person who was likely to be under the influence of intoxicating liquor while driving the welding truck. Foster admitted that he was an occasional drinker of intoxicating liquor, and that he sometimes drank to excess, and that on several occasions he had drunk intoxicating liquors when his employer was present. The record shows that Foster frequently visited the cafes in Yazoo City at night and drank beer in the cafes, and that his welding truck was

usually parked in front of the cafe while he was in the cafe. Foster had been arrested during the preceding February for being drunk on the street in Yazoo City and had spent the night in jail. And it appears from the testimony that on the Sunday next preceding the date of the wreck Foster had been drinking heavily during the forenoon while working on a job for Petermann Brothers, and that Mr. Hub Petermann carried him to town to buy him a dinner to help get him back into a condition to work.

We think that this case falls within the rule laid down by the Court in the case of Levy v. McMullen, supra, and that the evidence was sufficient to warrant the jury in returning a verdict against Petermann Brothers as well as Foster himself. ██ ██ As to the amount of the damages, plaintiff's injuries were serious and extremely painful, and we do not think that the amount of the verdict is excessive.

Appellant's attorneys in their argument make the additional point that the judgment of the lower court should be reversed for the reason that the defendant Foster, who had been called as an adverse witness by the plaintiff, while he was being cross-examined by his own attorney, who was also the attorney for the appellants, stated that the plaintiff's attorney, in a conversation with Foster some time prior to the trial, had told Foster that if he obtained a judgment against Petermann Brothers and Foster both, he would "make Petermann's insurance pay". On the redirect examination of the witness by plaintiff's attorney, which followed immediately, plaintiff's attorney asked Foster the question: "Now, Mr. Foster, how does Mr. Barbour happen to be representing you in this matter?" Foster's answer was: "The insurance company told him to take the case and represent me and the insurance company, so I am under agreement—". At this point, Mr. Barbour, the attorney for the defendants, interrupted the examination of the witness, and requested that the court de-

clare a mistrial. This the court declined to do. But the court did instruct the jury to disregard any remarks that had been made about an insurance company in the case, and the court stated to the jury that they should "judge the case solely on the facts and on the parties before the court, without regard to any insurance company".

This Court has held that reference by plaintiff's attorney in the trial of a case of this kind to liability insurance coverage carried by the defendant is highly prejudicial and constitutes sufficient cause for the court to declare a mistrial or for this Court to reverse the case on appeal.

Herrin v. Daly, 80 Miss. 340, 31 So. 790, 92 Am. St. Rep. 605; M. & A. Motor Freight Lines v. Villere, 190 Miss. 848, 1 So. (2d) 788; Odom v. Walker, 193 Miss. 862, 11 So. (2d) 452; Walley v. Williams, 201 Miss. 84, 28 So. (2d) 579.

The reference to the insurance protection carried by Petermann Brothers in this case, however, was made by one of the defendants, Foster, in answer to a question propounded to him by the defendants' own attorney, and for that reason the defendants are not in a position to take advantage of the rule laid down in Herrin v. Daly, supra, and followed in the later cases cited above.

For the reasons stated above the judgment of the lower court should be affirmed.

Affirmed.