*389
 
 MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. James M. Kitchens sustained serious injuries after falling more than twenty feet from a forklift, improperly used to lift him.
 
 [1]
 
 Kitchens’s employer was repairing a gravel hopper for D.K. Aggregates, LLC. DK Aggregates subleased the forklift from Dirtworks, Inc. Kitchens claims Dirtworks is liable for his injuries because it negligently entrusted the forklift to DK Aggregates. Kitchens alleges Dirtworks, through a common owner of both Dirt-works and DK Aggregates, knew or should have known DK Aggregates was improperly using the subleased forklift to lift people.
 

 ¶ 2. Mississippi law imposes liability on owners who entrust their vehicles or other chattels to people they know, or should have known, to be reckless or incompetent. Kitchens relies on Colorado law and argues the scope of negligent-entrustment liability should also include breach of the duty to reclaim heavy equipment if the owner learns the equipment is being used in an unsafe manner, creating a foreseeable risk of injury. Mississippi courts have not addressed this theory of negligent entrustment. But even under Colorado’s view that later-acquired knowledge of negligent use of the chattel imposes a duty to terminate the entrustment, we find Kitchens offered insufficient evidence of Dirtworks’ later actual knowledge of improper use of the forklift. Therefore, we affirm the Harrison County Circuit Court’s grant of summary judgment in favor of Dirtworks, dismissing Kitchens’s negligent-entrustment claim.
 

 STANDARD OF REVIEW
 

 ¶ 3. We conduct a de novo review of a trial court’s grant or denial of a motion for summary judgment.
 
 Lewallen v. Slawson,
 
 822 So.2d 236, 237 (¶ 6) (Miss.2002) (citation omitted). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). In determining whether the trial court properly granted summary judgment, we view the facts in the light most favorable to the nonmovant.
 
 Robinson v. Singing River Hosp. Sys.,
 
 732 So.2d 204, 207 (¶ 12) (Miss.1999) (citation omitted).
 

 ¶ 4. Summary judgment must be granted when the nonmoving party “fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial.”
 
 Borne v. Dunlop Tire Corp.,
 
 12 So.3d 565, 570 (¶16) (Miss.Ct.App.2009) (citing
 
 Grisham, v. John Q. Long V.F.W. Post, No. 4057, Inc.,
 
 519 So.2d 413, 416 (Miss.1988)). To withstand summary judgment, the nonmoving party must produce significant probative evidence of a genuine issue for trial.
 
 Id.
 
 (citing
 
 Price v. Purdue Pharm. Co.,
 
 920 So.2d 479, 485 (¶ 16) (Miss.2006)).
 

 FACTS
 

 ¶ 5. The facts considered in the light most favorable to Kitchens establish that in the summer of 2006, Murray Moran, part-owner and day-to-day manager of Dirtworks, was contacted by the manager of DK Aggregates, a company Moran also partly owned. DK Aggregates needed to lease a special type of forklift called a “skylift,” designed to lift large equipment
 
 *390
 
 but not people. The forklift was available at Puckett Rentals, but because DK Aggregates did not have an account with Puckett Rentals, Moran leased the forklift using Dirtworks’ account and “subleased” it to DK Aggregates. On the first of each month, including November 1, 2006, the week of Kitchens’s accident, Dirtworks invoiced DK Aggregates for approximately the cost of the lease with Puckett Rentals.
 

 ¶ 6. Moran did not ask DK Aggregates how it intended to use the forklift. His deposition testimony reflects he assumed DK Aggregates planned to lift pipe and equipment, as it had done when Dirtworks had rented forklifts for it in the past. Moran claimed he did not consider that DK Aggregates might use the forklift to lift people because, in the past, when DK Aggregates needed to lift people, it rented a “manlift.”
 

 ¶ 7. DK Aggregates ultimately used the subleased forklift for various tasks around the gravel pit — including lifting people. DK Aggregates owned a “man-basket,” purchased by Moran as part of an auction lot of steel pieces. According to DK Aggregates employees, they chained the man-basket to the forklift to raise and lower other employees.
 

 ¶8. Several months into the forklift’s sublease, DK Aggregates hired Pearl River Fabricators to perform welding work at the site. Moran negotiated the contract. After work had begun, Moran asked Pearl River to repair DK Aggregates’ gravel hopper. Because access to the gravel hopper was more than twenty feet in the air, a DK Aggregates employee (not Moran) lent Pearl River the forklift and man-basket to Kitchens and other welders.
 

 ¶ 9. Pearl River, unsupervised by DK Aggregates, did not chain the man-basket to the forklift. While Kitchens and two others were more than twenty feet in the air, the forklift began to tilt and the man-basket slid off the prongs of the forklift, causing serious injury to Kitchens.
 

 ¶ 10. Kitchens sued both DK Aggregates and Dirtworks for negligence. He alleged Dirtworks was negligent in entrusting DK Aggregates with the forklift. Kitchens claimed Dirtworks, through Moran, should have foreseen DK Aggregates would use the skylift in an unreasonably risky way. He further alleged that because DK Aggregates used the forklift in an unreasonably dangerous manner, causing Kitchens’s injuries, Dirtworks must share in the liability.
 

 ¶ 11. The trial court granted summary judgment in favor of Dirtworks. It found Kitchens did not present sufficient evidence to create the existence of Dirtworks’ knowledge, an essential element to Kitchens’s negligent-entrustment claim. The trial court granted Dirtworks a final judgment under Rule 54(b) of the Mississippi Rules of Civil Procedure.
 
 [2]
 
 Kitchens timely appealed.
 

 DISCUSSION
 

 ¶ 12. Kitchens presented no evidence that Dirtworks knew or should have known at the time DK Aggregates asked Dirtworks to rent the forklift on its behalf that DK Aggregates would use the forklift in an unreasonably dangerous way (to lift people). Moran testified that based on past rentals for DK Aggregates, Dirtworks assumed DK Aggregates would use the forklift to lift pipe and other heavy equipment. Since DK Aggregates had in the past rented a special manlift to lift people,
 
 *391
 
 Dirtworks also assumed that DK Aggregates would not use the forklift to lift people. Kitchens put forth no evidence creating a factual dispute whether Dirt-works’ assumptions at the time of the initial sublease were unreasonable. Thus, we affirm the trial court’s finding there was no issue of negligent entrustment in Dirt-works’ renting the forklift and
 
 initially
 
 subleasing it to DK Aggregates.
 

 ¶ 13. But there is evidence that DK Aggregates, after receiving the forklift, began using it to lift people. Kitchens argues Dirtworks learned, or should have learned, through Moran, who is part-owner of both companies, about this unreasonably dangerous use. For Kitchens to have raised a claim of negligent entrustment based on these facts, Dirtworks must have had a duty to terminate the sublease if it had, in fact, learned DK Aggregates was unsafely using the forklift. Kitchens urges that we look to the Colorado Supreme Court’s decision in
 
 Casebolt v. Cowan,
 
 829 P.2d 352 (Colo.1992), which imposes such a duty to terminate the entrustment upon later-acquired actual knowledge that an unreasonable risk has come to light after the initial entrustment.
 

 A. The Tort of Negligent Entrustment
 

 1. Mississippi’s Adoption of the Negligent-Entrustment Doctrine
 

 ¶ 14. In 1924, Mississippi first imposed negligence liability on the owner, in addition to the driver, of a car driven recklessly and causing injury.
 
 Anderson v. Daniel,
 
 136 Miss. 456, 101 So. 498 (1924). In
 
 Anderson,
 
 the car owner breached his duty by permitting his minor son, whom he knew was a reckless driver, to use his car. In 1931, the Mississippi Supreme Court imposed this same liability on another car-owning parent.
 
 Herman v. Maley,
 
 159 Miss. 538, 132 So. 541, 542 (1931). The court reasoned “parents ... must suffer the consequences of permitting [their minor children] to drive an automobile when they know, or with reasonable care should have known, of their incompetency.”
 
 Id.
 

 ¶ 15. Over the next twenty years, the supreme court further expanded liability to employers who allowed their “incompetent” (habitually drunk) employees to use company vehicles for non-business purposes (no vicarious liability). In a series of cases, the court imposed liability on employers for their employee’s drunk driving when the employer had actual or constructive knowledge that the employee was a habitual drinker, making it foreseeable the employee would drive the company vehicle while drunk.
 
 Petermann v. Gary,
 
 210 Miss. 438, 444, 49 So.2d 828, 830 (1951);
 
 Richton Tie & Timber Co. v. Smith,
 
 210 Miss. 148, 156-58, 48 So.2d 618, 620-21 (1950);
 
 Levy v. McMullen,
 
 169 Miss. 659, 665-66, 152 So. 899, 900 (1934);
 
 Slaughter v. Holsomback,
 
 166 Miss. 643, 147 So. 318, 322 (1933).
 

 ¶ 16. In 1951, the supreme court imposed negligent-entrustment liability on a non-parent/non-employer defendant.
 
 Dixie Drive It Yourself Sys. Jackson Co. v. Matthews,
 
 212 Miss. 190, 54 So.2d 263 (1951). The defendant rental company, Dixie Drive It Yourself, was found liable for renting a car to a drunk driver, Shivers. Dixie had frequently rented Shivers cars. Before his first rental, Dixie required an application, including signing a statement he would not drive drunk, and references about his driving. When his references checked out, Dixie began renting cars to Shivers without further inquiry. On his 57th rental, Shivers wrecked the car because he was driving drunk.
 
 Id.
 
 at 196, 54 So.2d at 264. On the “narrow issue” of whether Dixie knew or should have known Shivers was drunk at the time
 
 *392
 
 he rented the ear, the supreme court found there was evidence supporting the jury’s verdict that Dixie did know.
 
 Id.
 
 at 201-02, 54 So.2d at 266-67.
 

 2. Mississippi’s Adoption of the Restatement (Second) of Torts, Section 390
 

 ¶ 17. By the 1950s, Mississippi had adopted the Restatement (Second) of Torts, section 390, for its definition of negligent entrustment.
 
 See, e.g., Lovett Motor Co. v. Walley,
 
 217 Miss. 384, 393, 64 So.2d 370, 374 (1953). Under section 390:
 

 One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share, in or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them.
 

 Restatement (Second) Torts, § 390 (1965).
 

 ¶ 18. This court has interpreted section 390 to contain three elements required to establish a prima facie case of negligent entrustment:
 

 (1) that the defendant supplied a third party with the chattel in question for the use of the third party;
 

 (2) that the supplier of the chattel knew or should have known that the third party would use the chattel in a manner involving an unreasonable risk of harm; and
 

 (3)that harm resulted from the use of the chattel.
 

 Bullock Bros. Trucking Co. v. Carley,
 
 930 So.2d 1259, 1262 (¶5) (Miss.Ct.App.2005).
 

 ¶ 19. In recent negligent-entrustment cases, the determining issue has been either the first element (Was the defendant a “supplier” of the chattel?) or the second (Did the supplier have actual or constructive knowledge the third party would use the chattel in an unreasonably risky way?).
 
 See, e.g., Laurel Yamaha, Inc. v. Freeman,
 
 956 So.2d 897, 902-04 (¶¶ 18-24) (Miss.Ct.App.2007) (discussing supplier requirement);
 
 Davis v. Seymour,
 
 868 So.2d 1061, 1063-64 (¶¶ 8-11) (Miss.Ct.App.2004) (discussing knowledge requirement).
 

 ¶ 20. Here, Dirtworks only challenges the knowledge element. It neither disputes it “supplied” the forklift, nor does it contest that harm resulted from the chattel’s use.
 

 ¶ 21. Still we find Mississippi’s definition of “supplier” is relevant to this appeal. Our courts have defined a “supplier,” for purposes of negligent entrustment, as one who has a right to control the chattel at the time of the injury.
 
 Laurel Yamaha,
 
 956 So.2d at 903 (¶22) (citing
 
 Sligh v. First Nat’l Bank of Holmes County,
 
 735 So.2d 963, 969 (¶¶ 38-34) (Miss.1999)). In fact,
 
 Sligh
 
 emphasizes this right to control is the “paramount requirement” of negligent-entrustment liability.
 
 Sligh,
 
 735 So.2d at 969 (¶ 33). In contrast, the Colorado case, which Kitchens asks us to follow on the second knowledge element, defines a supplier as one who has control at the time of initial entrustment.
 
 [3]
 

 Casebolt,
 
 829 P.2d at 359-60.
 

 
 *393
 
 3. The Duty to Terminate the Entrustment
 

 1122. Focusing on the knowledge element, Dirtworks claims the trial court properly granted summary judgment because the only relevant knowledge is what Dirtworks knew or should have known at the time of the initial sublease (July or August 2006). Dirtworks argues that because Kitchens did not produce any evidence of actual or constructive knowledge at the time of the initial lending, Mississippi law does not recognize negligence under these circumstances.
 

 ¶23. Kitchens argues, because Dirt-works maintained the right to control the forklift by terminating the month-to-month sublease, its knowledge from the initial entrustment to the time of the accident is relevant.
 

 ¶24. There are no Mississippi cases addressing this specific issue. Kitchens relies on Colorado law for the proposition that within the negligent-entrustment doctrine is the duty to terminate the entrustment “if the entrustor acquires information that such an unreasonable risk exists or has come into being after the entrustment and the entrustor has the legal right and ability to end the entrustment.”
 
 Casebolt,
 
 829 P.2d at 360. In
 
 Casebolt,
 
 an employer allowed his employee to use the employer’s car for personal use. There was no evidence the initial lending was negligent. But on the day the employee was set to return home from an out-of-town work site, the employer drank a few beers with the employee. The employer did not revoke the entrustment or discourage the employee from drinking.
 
 Id.
 
 at 354-55. That evening the employee died in a car accident caused by employee’s intoxication. The employee’s wife sued the employer, arguing the employer was liable under a negligent-entrustment theory.
 

 ¶ 25. The Colorado Supreme Court held the employer “had a duty to take reasonable action to terminate the entrustment before leaving the ... restaurant if by that time he possessed knowledge that [Lindel] Casebolt was likely to use the vehicle in a manner involving unreasonable risk of physical harm to himself or others.”
 
 Id.
 
 at 361. Relying on section 390 of the Restatement (Second) of Torts, the Colorado court found the negligent-entrustment doctrine included the duty to terminate the entrustment when a reasonable person would terminate it.
 
 Id.
 
 at 360-61.
 

 ¶ 26. While the Colorado Supreme Court recognized the Restatement’s negligent-entrustment doctrine “is intended to reflect a conclusion that a duty exists under the specific and limited circumstances for which those sections [308, 309, and 390] provide guidance,” it nevertheless expanded this duty to include terminating the entrustment when a reasonable person would terminate it.
 
 [4]
 

 ¶ 27. In considering whether Mississippi’s negligent-entrustment doctrine is as broad as Colorado’s, we first note section 390 uses the present tense “supplies,” and this court has used the past tense “supplied” in addressing this required element. Both tenses can describe a one-time action (supplying a forklift for the day) or an action that occurs over time (supplying a forklift for four months). To say one has a duty to terminate the entrustment is another way of saying one has a duty
 
 not
 
 to
 
 *394
 
 continue supplying the forklift. For Dirt-works, the duty, viewed in this way, would be not to renew the month-to-month sublease on November 1, less than a week prior to Kitchens’s accident.
 

 ¶ 28. Our supreme court has stated the right to control the chattel is the “paramount requirement for liability.”
 
 Sligh,
 
 735 So.2d at 970 (¶ 33). It logically follows that the right to control imposes a duty to exercise that control if unreasonably risky use is foreseeable.
 

 ¶ 29. We further point out that Mississippi has looked to Colorado before in determining the scope of negligent-en-trustment liability. In
 
 Sligh,
 
 Mississippi relied on
 
 Peterson v. Halsted,
 
 829 P.2d 373 (Colo.1992), handed down by the Colorado Supreme Court on the same day as
 
 Case-bolt
 
 and relying on
 
 Casebolt’s
 
 reasoning, to determine whether a bank that financed a car was a “supplier” for purposes of negligent-entrustment liability.
 
 Sligh,
 
 735 So.2d at 973 (¶ 63) (holding the bank was not a “supplier” because it had no right to control the vehicle after purchase).
 
 Sligh
 
 also cited
 
 Casebolt
 
 to support its conclusion the right to control is the paramount requirement for negligent-entrustment liability.
 
 Id.
 
 at 969 (¶ 33).
 

 ¶ 30. Earlier employer-employee cases appear to impose liability for continuing to allow the employee use of the vehicle, relying on what the employer knew or should have known over the course of the employment, not just what the employer knew when it started allowing the employee to use the company vehicle.
 

 ¶ 31. While there are similarities between Mississippi’s and Colorado’s interpretations of the tort, there are important distinctions we must also consider. First, Mississippi has never imposed a duty to reclaim the vehicle in a commercial transaction. In the early parent-minor child and employer-employee cases, both the parent and employers had a duty, independent of negligent entrustment, to know whether their child or employee was reckless. And they also had the ability to take the car keys back at any point. Here, Dirtworks had no duty to monitor DK Aggregates. It is not its parent company. We recognize that liability in this case, with the unique facts of a common owner, may impose an undue burden on future commercial lessors, like Puckett Rentals, which is not a defendant in this case, to monitor lessees who otherwise appeared safe and competent at the time the lease was formed.
 

 ¶ 32. Second, Mississippi, unlike Colorado, expressly follows the language of section 390, which is silent about a duty to reclaim the chattel. The Restatement (Second) of Torts has a separate section, section 318, that imposes a duty to regain control of the chattel:
 

 If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control.
 
 [5]
 

 
 *395
 
 Restatement (Second) of Torts § 318 (1965).
 

 ¶ 33. In reading sections 390 and 318 together, it is arguable that Kitchens is really asking that we impose a duty closer to section 318, without proving Dirtworks was present, had the ability to control DK Aggregates, and knew of the necessity to regain control of the forklift.
 

 ¶ 34. But regardless of the origin of the duty Kitchens requests we impose — unlike the duty not to entrust initially, which can be breached by constructive knowledge— the duty to terminate the entrustment requires evidence of
 
 actual knowledge. See Casebolt,
 
 829 P.2d at 360-61. We point out
 
 Casebolt
 
 did not impose a duty to monitor the employee’s use after the initial entrustment. Rather, the Colorado Supreme Court remanded the case to determine whether the employer
 
 possessed
 
 knowledge of the employee’s incompetence.
 
 Id.
 

 ¶ 35. Kitchens argues Dirtworks
 
 should have
 
 learned DK Aggregates was using the forklift to lift people. But, even following
 
 Casebolt’s
 
 directives, consistent with the Colorado case and our interpretation of Mississippi law, our inquiry still turns on actual knowledge. Thus, we must instead ask whether there is evidence Dirt-works “acquire[d] information” about DK Aggregates’ unreasonably risky use.
 
 Id.
 
 at 360;
 
 cf. Dixie Drive It Yourself,
 
 212 Miss. at 202-03, 54 So.2d at 267 (imposing liability, not for failing to require another reference or application after initial rental, but for renting another car despite actual evidence of Shivers’s intoxication).
 

 B. Dirtworks’ Knowledge
 

 ¶ 36. Kitchens’s primary evidence stems from the relationship of the two companies through their common owner, Moran. But this relationship is different than the parent-minor child relationship or employer-employee relationship frequently found in negligent-entrustment cases. In both of those relationships, there is an assumption a parent should know that his child drives recklessly or an employee should know his employee is showing up to work drunk. Here, Dirtworks is not DK Aggregates’ parent company, so it has no duty to know what DK Aggregates is doing.
 

 ¶ 37. Kitchens argues Dirtworks nevertheless knew what DK Aggregates was doing through Moran. Kitchens reasons that because Moran knew Pearl River was working on the gravel hopper, Moran should have known work on the gravel hopper required lifting Kitchens and others twenty feet in the air. Kitchens further claims Moran should have known DK Aggregates would lend the forklift and man-basket to Pearl River for this purpose.
 

 ¶ 38. While there is evidence DK Aggregates had used the forklift to lift people prior Kitchens’s accident, Kitchens failed to come forward with any evidence to show Moran or any other Dirtworks agent actually knew DK Aggregates was doing this. If there was prior improper use of the forklift, the evidence does not indicate it was on any projects involving Moran. From Kitchens’s evidence, Moran’s only involvement in day-to-day matters for DK Aggregates was on the Pearl River project. If Moran was responsible for knowing what was going on at the gravel hopper Kitchens was repairing, his responsibility arose as an agent for DK Aggregates, not Dirtworks. Only Moran’s actual prior knowledge of improper use can be imputed to Dirtworks. What Moran should have known as an agent for DK Aggregates cannot be imputed to Dirt-works.
 

 
 *396
 
 ¶ 89. Even assuming our supreme court would recognize Casebolt’s holding concerning later-acquired knowledge of unreasonable risk, Kitchens’s evidence does not raise a factual dispute of actual knowledge by Dirtworks triggering a duty to terminate the sublease. Therefore, we affirm the circuit court’s decision that Dirtworks is entitled to summary judgment as a matter of law on Kitchens’s negligent-entrustment claim.
 

 ¶ 40. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Because Dirtworks did not contest Kitchens’s allegation that DK Aggregates was using the forklift improperly, we assume, for our analysis in this opinion only, that the use of the forklift was unreasonable.
 

 [2]
 

 . At the time the trial court granted summary judgment to Dirtworks, DK Aggregates was still a defendant in the lawsuit.
 

 [3]
 

 . Colorado recognizes two separate duties: (1) the duty not to relinquish control of a vehicle if it is reckless use is reasonably foreseeable; and (2) the duty to terminate entrustment if one still has the ability to control the vehicle and it is foreseeable further use will be reckless.
 
 Casebolt,
 
 829 P.2d at 359-60. Colorado relies on Restatement (Second) of Torts sections 390, and 308 and 309, to impose the first duty and, unlike Mississippi, can hold sellers liable for negligent entrustment.
 
 Id.
 
 Colorado relies on the
 
 logic
 
 of the Restatement sections to impose the second duty and the strong public policy that those who have
 
 *393
 
 the ability to regain control should in the face of foreseeable harm to others.
 
 Id.
 
 at 360-62.
 

 [4]
 

 . Colorado was guided by public policy, concluding under these circumstances the social utility of an employer being able to lend his employee a vehicle for personal reasons was low, the burden on the employer to request his keys back was also low, and the public risk of the employee driving drunk was high.
 

 [5]
 

 . Section 318 has an official caveat: "The Institute expresses no opinion as to whether there may not be a duty of reasonable care to control the conduct of the third person ... where the actor, although not present, is in the vicinity, is informed of the necessity and opportunity of exercising such control, and can easily do so.”