IN THE SUPREME COURT OF MISSISSIPPI

NO. 2005-IA-01605-SCT

*LAUREL YAMAHA, INC.*

*v.*

*NORMAN DECKER FREEMAN AND SUSAN*
*FREEMAN, INDIVIDUALLY, AND ON BEHALF*
*OF THE WRONGFUL DEATH BENEFICIARIES*
*OF CHRISTOPHER BRANDON FREEMAN*


| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/2005 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LAURA L. GIBBES |
| | JOHN H. HOLLOMAN, III |
| | F. HALL BAILEY |
| ATTORNEYS FOR APPELLEES: | CRAIG N. ORR |
| | ROBERT D. GHOLSON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 05/31/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1.     This interlocutory appeal arises from a wrongful death action filed by Norman Decker

Freeman and Susan Freeman (collectively "the Freemans") against Laurel Yamaha, Inc.

("Laurel Yamaha"). The Freemans' son, Christopher Brandon Freeman ("Brandon"),

purchased a 2002 Yamaha YZF600R sport motorcycle from Laurel Yamaha. Three days later, Brandon had an accident on this motorcycle which resulted in his death.

¶2. The Freemans filed a lawsuit, alleging, inter alia, that Laurel Yamaha: 1) negligently failed to determine whether Brandon was licensed and competent; 2) negligently entrusted the motorcycle to Brandon; 3) negligently trained and supervised its staff; and 4) negligently failed to sell Brandon a properly sized helmet.

¶3. Following discovery, Laurel Yamaha filed a Motion for Summary Judgment. Laurel Yamaha asserted it had no legal duty to Brandon and therefore could not be negligent under the law. Laurel Yamaha also claimed the Freemans' demand for hedonic damages was precluded per Mississippi Code Annotated Section 11-1-69. A hearing was held on Laurel Yamaha's Motion for Summary Judgment, and the trial court denied the Motion for Summary Judgment.

¶4. From the Order Denying the Motion for Summary Judgment, Laurel Yamaha filed a Petition for Interlocutory Appeal, which was granted.

¶5. Laurel Yamaha raises the following issues on appeal:

1) Whether Mississippi law recognizes a claim for negligent entrustment in the context of a sales transaction.
2) Whether Mississippi law imposes any duty on a seller, sufficient to support a negligence claim, to restrict motor vehicle sales to licensed drivers or to determine the competence of drivers as part of the sale.
3) Whether any factual basis exists to support the Freemans' claims for negligent training or supervision of Laurel Yamaha's staff.
4) Whether any factual basis exists that the helmet sold to Brandon was too large.
5) Whether any legal basis exists for the Freemans' hedonic damages claim.

## STATEMENT OF THE FACTS

¶6.     Brandon was an eighteen-year-old student who attended Jones County Junior College, living at the home of his parents in Laurel, Mississippi. He also held a part-time job.

¶7.     Prior to April 10, 2004, Brandon called Laurel Yamaha and spoke with the assistant manager, Keith Pitts ("Pitts"). Pitts described the motorcycle inventory then available. On April 10, 2004, Brandon drove in a car to Laurel Yamaha. After arriving at Laurel Yamaha, Brandon was assisted by Pitts in shopping for a motorcycle. Pitts revealed the following facts by sworn affidavit: Brandon told Pitts that he had never owned a motorcycle before; Brandon told him that several of his friends had bikes and motorcycles and that he was experienced in operating motorcycles.  Brandon selected a 2002 Yamaha YFZ600RP motorcycle for purchase. Brandon demonstrated a familiarity with this particular type of motorcycle. According to Pitts:

> As I observed [Brandon] during this discussion, he appeared to be very familiar with this type of motorcycle and he already knew of many of the features I pointed out to him. [Brandon] appeared both physically and mentally capable of operating the motorcycle and had knowledge about motorcycles that indicated he was experienced with them.

¶8.     Conversely, Brandon's riding competency was questioned by a friend, Jacob Staples ("Staples"), who had been riding with Brandon seconds prior to the fatal accident. In his deposition, Staples opined: "Knowing and being able to ride bikes for six years, I knew [Brandon] was not competent."

¶9.     To finance the motorcycle, Brandon needed credit approval. Brandon told Pitts that his father would not co-sign a loan for him, but would allow Brandon to purchase the motorcycle if he could finance it himself. Once Brandon was approved for financing, Pitts

3

told Brandon to call his father to approve Brandon's purchase of the motorcycle. To give Brandon privacy, Pitts stepped away from his desk as Brandon used the telephone. In affidavits, Brandon's parents testified that no call was made to them and that they did not have any conversation with Brandon consenting to the purchase. Brandon told Pitts he spoke with his father and that his father approved of the purchase.

¶10. While verifying Brandon's credit information, Pitts asked to see Brandon's driver's license. Brandon presented a valid Mississippi driver's license. However, the license did not have an "E" endorsement. Pitts told Brandon he would need to obtain an "E" endorsement in order to operate his motorcycle on the highway and Brandon nodded his head in agreement.

¶11. After completing the credit approval process, Pitts asked another employee of Laurel Yamaha, Dirk Creel ("Creel"), to go over the features of the motorcycle with Brandon. After the sales transaction was completed, Pitts saw Brandon leave the premises on the motorcycle. Pitts testified that when Brandon left the premises, he was operating the motorcycle competently and observing the rules of traffic. Pitts saw Brandon operating the motorcycle on the street later that same day as an experienced driver would. Other than one day after the sale, when Brandon came to Laurel Yamaha to make a payment, Pitts testified he had no further contact with Brandon or the Freemans after completion of the sale.

¶12. An "E" endorsement is required to operate a motorcycle on the highways of the State of Mississippi. *See* Miss. Code Ann. § 63-1-6 Rev. 2004).[1] The statute states specifically

---

[1]Miss. Code Ann. Sect. 63-1-6 states:
No person shall drive or operate a motorcycle upon the highways of the State

4

"upon the highways" of the state. Laurel Yamaha asserts, and the Freemans concede, Mississippi law does not require an "E" endorsement for motorcyclists who choose to operate their motorcycles on race tracks, off-road areas, driving courses or private property. Furthermore, according to the Freemans, twenty-one days before the purchase of the motorcycle, Brandon took and failed the motorcycle licensing test. Pitts testified Brandon did not tell him he had taken and failed the test.

¶13.    Three days after the sale, Brandon left his parents' home for a ride on the motorcycle. Brandon's friend, Staples, riding his own motorcycle, was with Brandon. Staples testified he and Brandon went riding sometime between 8:00 and 9:00 p.m. on Mississippi Highway 15,

---

of Mississippi without first securing either a regular operator's license with a motorcycle endorsement upon it, or a restricted motorcycle operator's license, except those persons especially exempted by Section 63-1-7, Mississippi Code of 1972; provided, however, that any person possessing a valid Mississippi operator's license issued prior to July 1, 1985, may operate a motorcycle upon the highways of this state until such time as said license expires. Upon the expiration of a license issued prior to July 1, 1985, and the payment of One Dollar ($ 1.00), the applicant for renewal may obtain the necessary motorcycle endorsement without further examination.

> A motorcycle endorsement may be issued any person who holds a valid Mississippi driver's license and meets the other requirement for such endorsement contained in this chapter.

> A restricted motorcycle operator's license may be issued to any applicant who fulfills all the requirements necessary to obtain a Mississippi operator's license that may be applicable to the operation of a motorcycle. Such license shall entitle the holder thereof to operate a motorcycle, and no other motor vehicle, upon the highways of this state.

5

which has a posted speed limit of 55 miles per hour. A speed advisory sign indicating 45 miles per hour was posted within .3 miles of the crash site . Around 9:30 p.m., Brandon and Staples decided to return to their respective homes. Staples testified when he pulled into his driveway, Brandon continued to travel northbound going to his parents' home. Staples stopped and watched Brandon, and from his driveway, Staples saw Brandon leave the highway and then saw the motorcycle flipping. Staples rode his motorcycle up a hill to where Brandon was located. He found Brandon unconscious, ten feet from his motorcycle. Staples left to get help and never saw Brandon regain consciousness.

¶14. Accident Reconstructionist Brett Alexander, who was retained by the Freemans, opined the accident was caused by "inexperience and incompetence in operating such a high powered motorcycle." A separate accident reconstructionist, Donald Rawson, retained by Laurel Yamaha, prepared an Accident Reconstruction/Analysis Report. The report stated, "The straight skid mark was indicative of a skilled rider utilizing both brakes to maintain a straight path" and "the speed of the motorcycle at the time it left the highway was calculated at 81 miles per hour. There is additional speed not accounted for such as the damage caused to the front fork, which was sufficient enough to fracture the front fork and cause extensive damage to the instrument housing."

¶15. The death certificate lists the cause of death as trauma to the head resulting from a motorcycle accident. All parties agree Brandon was not wearing a helmet after the accident. Staples testified that when he saw Brandon after the accident, Brandon's helmet was not on his head, but was lying on the road. Staples further testified that on his way to get help, he stopped to pick up the helmet and put it in the back of his truck. The investigating officer

6

testified that when he arrived at the scene he looked for a helmet but could not locate one. The officer testified that Staples stated to him that Staples, in a panic, picked up the helmet, and took it to his home when he went to seek help. The officer stated he asked Staples for the helmet twice, but never received it. During his deposition, the officer was shown the helmet for the first time. The officer did not observe any damage to the helmet and there were no scratches or gashes on the helmet. He was asked if the helmet was in a condition consistent with the elements of this accident. He opined that the helmet did not appear to have been worn during the accident. In the report prepared by Rawson, it was observed that there were no scratches or abrasions on the helmet and that the helmet had no other noticeable defects.

¶16.    In their Complaint, the Freemans allege the helmet sold to Brandon by Laurel Yamaha was too big and that Laurel Yamaha failed to advise Brandon on the proper fitting of the helmet. In her affidavit, Susan Freeman stated the helmet was too big for Brandon. She based this opinion by comparing a size tag found inside Brandon's baseball cap to a size chart found on HJC's website, which would call for a size small helmet, rather than the medium size helmet purchased by Brandon.

## STANDARD OF REVIEW

¶17.    This is an interlocutory appeal stemming from a denial of Laurel Yamaha's Motion for Summary Judgment. *See* M.R.A.P. 5.

> We review de novo a trial court's disposition of a motion for summary judgment. ***Webb v. Braswell***, 930 So. 2d 387, 395 (Miss. 2006). In conducting our review, the evidence must be viewed in the light most favorable to the non-moving party. ***Hataway v. Estate of Nicholls***, 893 So. 2d 1054, 1057 (Miss. 2005). The movant carries the burden of demonstrating that no genuine issue of material fact exists. ***Miller v. Meeks***, 762 So. 2d 302, 304 (Miss. 2000).

*Franklin Collection Serv. v. Kyle*, 2007 Miss. LEXIS 11, *6 (Miss. 2007).

## ANALYSIS

**I.  Whether Mississippi law recognizes a claim for negligent entrustment in the context of a sales transaction.**

¶18.    The Freemans argue that Laurel Yamaha should be liable for negligent entrustment of the motorcycle to Brandon. In furtherance of this proposition, the Freemans assert Laurel Yamaha, in selling the motorcycle to Brandon, violated the Restatement (Second) of Torts § 390. The Restatement (Second) of Torts § 390 provides:

> One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

¶19.    The Freemans argue that Laurel Yamaha bears responsibility based on the Restatement, as it sold the motorcycle to Brandon, when it knew or had reason to know, that Brandon, because of his youth and inexperience, or otherwise, would use it in a manner involving unreasonable risk of physical harm to himself. *See* Restatement (Second) of Torts § 390. Laurel Yamaha argues that there is no evidence in the record to show, that at the time of sale, Pitts or Creel knew or had any reason to know that Brandon, a college student, would operate the motorcycle in a manner involving an unreasonable risk of physical harm, and that no evidence of same existed at the time ownership and control passed to Brandon.

¶20.    Laurel Yamaha asserts that Mississippi law does not establish a claim of negligent entrustment in the context of a sales transaction. In support of this assertion, Laurel Yamaha directs this Court to *Sligh v. First National Bank of Holmes County,* 735 So. 2d 963 (Miss.

8

1999). The Freemans seek to distinguish *Sligh* by asserting that Brandon, unlike the purchaser of the vehicle in *Sligh,* was not duly licensed to operate a motorcycle. However, as will be discussed *infra,* Brandon was not required to produce a license which showed the "E" endorsement. Further, it is uncontroverted that Brandon demonstrated he was familiar with the operation and features of the motorcycle he purchased.

¶21.    *Sligh* was a case of first impression for this Court. The Court held Harreld Chevrolet was not liable for negligent entrustment as "[a]fter the sale of the vehicle, Harreld Chevrolet had no control over it." *Id.* at 969. In finding no claim based on a negligent entrustment theory, *Sligh* held, "There is no evidence in the record which would indicate that Harreld had knowledge of [Plaintiff's] drinking habits. Harreld Chevrolet sold a truck to [Plaintiff] and no further relationship existed between the two." *Sligh,* 735 So. 2d at 970.

¶22.    *Sligh,* in reviewing the decisions of other states, held, "The paramount requirement for liability under the theory of negligent entrustment is whether or not defendant had a right to control the vehicle." *Id.* (citations omitted). Once the purchase was completed, ownership and control of the motorcycle passed to Brandon on April 10, 2004. The accident occurred on April 13, 2004. At the time of the accident, Brandon clearly owned, controlled and was in possession of the motorcycle, with no right to control enjoyed by Laurel Yamaha. "Suppliers in terms of the Restatement must have the right to control the chattel." *Id.* (quoting *Broadwater v. Dorsey,* 344 Md. 548, 555, 688 A.2d 436 (1997)). Absent the right to control, no action lies for negligent entrustment.

¶23.    Further, this Court has held, "The three primary indicia of ownership [are]: title, possession, and control. . . ." *Hobbs Automotive, Inc., d/b/a Kim's Chrysler, Dodge, Jeep,*

9

***Toyota v. Dorsey,*** 914 So. 2d 148, 167 (Miss. 2005). Brandon met all three and Laurel

Yamaha meets none. Title passed to Brandon, and he was in control and possession of the

motorcycle, just prior to and up to the time of the accident. In ***Sligh,*** we quoted the Supreme

Court of Florida, holding,

> It is clear under existing law there is no liability on the part of the seller of a motor vehicle where beneficial ownership or legal title, together with possession, have been transferred to a purchaser and injuries occur because of the negligence of the purchaser operating the vehicle. In short, transfer of ownership cuts off liability on the part of the former owner.

***Sligh,*** 735 So. 2d at 969 (quoting ***Horne v. Potamkin Chevrolet, Inc.,*** 533 So. 2d 261, 262

(Fla. 1988)). *See also* ***Savage v. LaGrange,*** 815 So. 2d 485 (Miss. App. 2002).

¶24.     The Freemans' desire to distinguish ***Sligh*** must fail. In ***Sligh,*** this Court clearly

addressed negligent entrustment in the context of a completed sales transaction. The doctrine

of negligent entrustment "'ought not to be extended where the party sought to be charged had

no control over the machine and the other party actually committing the injurious wrong was

the owner, *sui juris*.'" ***Sligh,*** 735 So.2d at 969 (quoting ***Estes v. Gibson,*** 257 S.W.2d 604,

607-08 (Ky. Ct. App. 1953)). The facts herein, as well as applicable law, require the same

result. The claim of negligent entrustment is without merit.

II.     **Whether Mississippi law imposes any duty on a seller, sufficient to support a negligence claim, to restrict motor vehicle sales to licensed drivers or to determine the competence of drivers as part of the sale.**

> To succeed on a claim for negligence, the plaintiff must prove duty, breach, causation and injury. ***Meena v. Wilburn,*** 603 So. 2d 866, 869 (Miss. 1992). The plaintiff must show "(1) the existence of a duty 'to conform to a specific standard for the protection of others against the unreasonable risk of injury,' (2) a breach of that duty, (3) causal relationship between the breach and alleged injury, and (4) injury or damages."***Id.*** at 870 n.5 (citing and quoting ***Burnham v. Tabb,*** 508 So. 2d 1072, 1074 (Miss. 1987)).

10

*Rein v. Benchmark Construction Co.,* 865 So. 2d 1134, 1143 (Miss. 2004) (citing *Donald v. Amoco Prod. Co.,* 735 So. 2d 161, 174 (Miss. 1999)).

¶25.	The Freemans assert Laurel Yamaha's sale to Brandon constituted a "knowing sale and relinquishment of a dangerous instrumentality" and was violative of Miss. Code Ann. Sects. 63-1-6 and 63-1-63.

¶26.	It is uncontested that Brandon produced his driver's license to Pitts and Pitts was aware Brandon's license did not bear an "E" endorsement. However, an "E" endorsement is not a prerequisite for purchasing a motorcycle in the state of Mississippi. *See* Miss. Code Ann. § 63-1-6 (Rev. 2004). An "E" endorsement is required for *operating* a motorcycle on the highways in Mississippi.

¶27.	The Freemans contend that allowing Brandon to purchase a motorcycle without an "E" endorsement is a violation of public policy. The Freemans offer no authority in support of their contention, nor does their contention comport with the mandates of Miss. Code Ann. Sect. 63-1-6. "[W]here the statute is plain and unambiguous there is no room for construction." *See **Gannett River Publ. Co. v. Entergy,*** 940 So. 2d 221, 224 (Miss. 2004); ***Bailey v. Almefty,*** 807 So. 2d 1203, 1206 (Miss. 2001).

¶28.	Laurel Yamaha argues Mississippi law does not impose any duty on a seller to determine whether a driver is licensed and/or competent. Laurel Yamaha's counter-public policy argument is that "if a motor vehicle seller is required to vouch for the competency of every person to whom he sells a motor vehicle, then sellers would be required to monitor each and every customer throughout the entire period of ownership. . . .[sellers] could be held liable for any injuries caused by a driver after the purchase of a vehicle and could be named

11

as defendants to every motor vehicle accident case filed in this state where allegations of driver negligence or incompetence were raised."

¶29.   The Freemans also assert that Laurel Yamaha violated Miss. Code Ann. Sect. 63-1-63 and that this constituted *negligence per se. "*To prevail in an action for negligence per se, a party must prove that he was a member of the class sought to be protected under the statute, that his injuries were of a type sought to be avoided, and that violation of the statute proximately caused his injuries." ***Gallagher Bassett Servs. v. Jeffcoat,*** 887 So. 2d 777, 787 (Miss. 2004) (citation omitted). Miss. Code Ann. Sect. 63-1-63 provides:  "No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under the provisions of this article or in violation of any of the provisions of this article."

¶30.   The Freemans again offer a public-policy argument akin to negligent entrustment, without citing persuasive authority.  They assert that a prudent retailer would have inquired as to why Brandon was not licensed and would not have let him drive away from the dealership. In support of this argument, the Freemans cite case law regarding negligence in the operation of motor vehicles. However, each case cited by the Freemans involves drivers under eighteen, in vehicles owned by another. Brandon was age eighteen when he purchased this motorcycle. Miss. Code Ann. Sect. 93-19-13 allows, "All persons eighteen years of age or older, if not otherwise disqualified, or prohibited by law, shall have the capacity to enter into binding contractual relationships affecting personal property. . . ."

¶31.   Brandon legitimately entered into the contract to purchase the motorcycle, and legal title and control passed to Brandon. As discussed *supra,* once Brandon gained legal title to

the motorcycle and it was in his possession, Brandon controlled its use. Accordingly, the statute does not impose a duty on Laurel Yamaha, because when this accident occurred, the motorcycle was not "owned by [Laurel Yamaha] or under [its] control." *See* Miss. Code Ann. § 63-1-63 (Rev. 2004).

¶32.    "Whatever the Legislature says in the text of the statute is considered the best evidence of the legislative intent." ***Miss. Dep't of Transp. v. Allred,*** 928 So. 2d 152, 155 (Miss. 2006). There is no language in either Miss. Code Ann. Sect. 63-1-6 or Miss. Code Ann. Sect. 63-1-63 which imposes a legal duty upon Laurel Yamaha. This Court is bound by the plain meaning of these statutes, and "[i]t is the task of the Legislature and not this Court to make the laws of this state." ***Id.*** at 156. Upon the facts of this case, this Court is unwilling to impose duties which were not expressly created by statute.

**III.     Whether any factual basis exists to support the Freemans' claim for negligent training or supervision of the Laurel Yamaha staff.**

¶33.    As we have determined, there is no Mississippi law which imposes any duty on a seller, sufficient to support a negligence claim, to restrict motor vehicle sales to licensed drivers or to determine the competence of drivers as part of the sale, this issue becomes moot. Therefore, this Court will not address it.

**IV.     Whether any factual basis exists to support the Freemans' claim that the motorcycle helmet sold to Brandon was too large.**

¶34.    In an affidavit, Brandon's mother, Susan, testified the helmet size was too big, when compared to the size tag found in Brandon's high school baseball cap. Additionally included with the affidavit was information from a website which provided sizing references for

helmets. According to that sizing chart, Susan opined Brandon should have been sold a "small" instead of a "medium."

¶35. In the affidavit presented, the Freemans provide no proof that Laurel Yamaha was negligent in the fitting or sale of this helmet. There was no evidence before the trial court or before this Court that would allow a determination that Laurel Yamaha did or did not follow any sort of procedure in the fitting or sale of the helmet. The affidavit of Susan alone is insufficient proof.

¶36. "'If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed.'' It is not our duty to weigh the competing evidence; it is our duty to determine if there is conflicting evidence for trial.'" *Estate of Johnson v. Chatelain*, 943 So. 2d 684, *4 (Miss. 2006) (citations omitted). The Freemans have not put forth sufficient facts with which to show there is a genuine issue for trial.

**V.     Whether any legal basis exists for the Freemans' hedonic damages claim.**

¶37. In their Complaint, the Freemans demand hedonic damages. However, as this Court has found no causes of action against Laurel Yamaha exist, the Freemans have no claim for damages. Therefore, we find this issue to be moot.

## CONCLUSION

¶38. Mississippi law does not recognize a claim for negligent entrustment in the context of a sales transaction. Furthermore, Mississippi law does not impose a duty on sellers to restrict sales to purchasers of motorcycles that have an "E" endorsement or to determine their competence before the sale. Additionally, the Freemans failed to present sufficient proof

14

regarding whether Laurel Yamaha was involved in the selection of the helmet. The Freemans have not presented facts sufficient to create a triable issue. Further, the issue regarding hedonic damages is moot.

¶39.    The trial court erred in not granting summary judgment to the defendants in this case. Therefore, the trial court is reversed, and this case is remanded for entry of judgment consistent with this opinion.

¶40.    **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR.  GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  LAMAR, J., NOT PARTICIPATING.**