BARNES, J.,
for the Court.
¶ 1. Bullock Brothers Trucking Company, Inc., challenges the denial of its motion for judgment notwithstanding the verdict by the Circuit Court of Forrest County. Finding that the trial judge erred in denying the motion, we reverse and render in favor of Bullock Brothers Trucking and the estate of Walley Bullock.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On the night of October 16, 1996, Gary Bullock drank a case of beer and became intoxicated. After his cousin dropped him off at the store to purchase more beer, Bullock walked to the office of his father/employer’s business, Bullock Brothers Trucking. While at the office, Bullock decided to take a truck from the business and drive it to the home of his estranged girlfriend, Shannon McSwain, the daughter of Charles Carley. Bullock testified via deposition that because the door to the office was unlocked, in order to enter he merely had to shove the door open.[1] Bullock entered the office, took the key to a dump truck, and drove it to McSwain’s mobile home. Upon arriving and finding that McSwain was not home, Bullock accidentally backed the truck into the trailer while attempting to turn the *1261 truck around. Drunk and already angry at McSwain for having pressed aggravated assault charges against him, Bullock intentionally slammed the truck into the trailer, this time knocking the mobile home off its blocks and into a tree. Bullock then proceeded to Carley’s house and intentionally smashed the dump truck into Carley’s pickup truck. Carley testified that the force of the blow knocked the pickup truck into the garage’s interior wall, causing a great deal of damage to both the house and the truck.
¶ 3. After the incident, Carley instituted a civil action against Gary Bullock, Bullock Brothers Trucking, and the estate of Wal-ley Bullock. Carley proceeded against Bullock Brothers Trucking on a theory of negligent entrustment, asserting that Bullock Brothers had supplied Gary Bullock with the dump truck knowing of Bullock’s propensity to use the truck in a harmful manner. At trial in the Circuit Court of Forrest County, the jury found for Carley and assessed damages at $44,350; it apportioned eighty percent of the fault for the incident to Bullock Brothers and twenty percent of the fault to Gary Bullock, who did not appear at the trial. As a result, a judgment of $35,480 was entered against Bullock Brothers Trucking. Bullock Brothers thereafter filed a motion for judgment notwithstanding . the verdict (JNOV) or, in the alternative, a new trial, which was denied by the trial court. Aggrieved, Bullock Brothers timely appealed to this Court. Finding that the trial court erred in denying Bullock Brothers’s motion for JNOV, we reverse and render.
STANDARD OF REVIEW
¶4. A motion for JNOV requires the trial court to test the legal sufficiency of the evidence supporting the verdict, not the weight of the evidence. Wilson v. Gen. Motors Acceptance Corp., 883 So.2d 56, 63(¶ 21) (Miss.2004). In ruling on a motion for JNOV, the lower court must consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that reasonably may be drawn therefrom. Id. In making its evaluation, the trial court must consider not only the evidence offered by the non-moving party, but any uncontradicted evidence offered by the moving party. Corley v. Evans, 835 So.2d 30, 36(¶ 17) (Miss.2003). “If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render.” Wilson, 883 So.2d at 63(¶ 22). Furthermore, when the plaintiff has failed to establish a prima facie case showing the elements of the cause of action, JNOV is proper. Id. However, we must affirm the lower court’s denial of JNOV when there is substantial evidence in support of the verdict such that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions. Wilson, 883 So.2d at 63(¶ 23).
ISSUE AND ANALYSIS
WHETHER THE TRIAL COURT ERRED IN DENYING BULLOCK BROTHERS’S MOTION FOR JNOV.
¶ 5. In Sligh v. First Nat’l Bank of Holmes County, 735 So.2d 963 (Miss.1999), the Mississippi Supreme Court adopted the Restatement (Second) of Torts definition of negligent entrustment. Liability under this theory is defined as follows:
One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, *1262 is subject to liability for physical harm resulting to them.
Id. at 969(¶ 32); Restatement (Second) of Torts § 390. Thus, the plaintiff must prove the following elements in order to make out a prima facie case of negligent entrustment: (1) that the defendant supplied a third party with the chattel in question for the use of the third party; (2) that the supplier of the chattel knew or should have known that the third party would use the chattel in a manner involving an unreasonable risk of harm; and (3) that harm resulted from the use of the chattel. Id. In the present case, the pivotal issue is whether Bullock Brothers “supplied” the dump truck to Gary Bullock for his use; after examining all of the evidence, we find that no reasonable juror could determine that it did.
¶ 6. Carley cites this Court’s decision in Savage v. LaGrange, 815 So.2d 485 (Miss.Ct.App.2002), as modifying the definition of negligent entrustment espoused in Sligh and its progeny. In his argument, Carley focuses on the following passage: “Mississippi recognizes that tort liability may arise under the theory of negligent en-trustment against one who makes a dangerous instrumentality available to another person under circumstances that create an unreasonable risk of injury to third persons and such injury, in fact, occurs.” Savage, 815 So.2d at 492(¶ 18) (emphasis added). Carley argues that the Savage court departed from the Restatement’s requirement that the defendant actively “supply” the third party with the chattel in question, opting instead to require merely that the defendant make the chattel available to the third party. However unfortunate our paraphrasing of the definition of negligent entrustment in Savage, a reading of the remainder of the opinion makes it clear that we in no way sought to alter the doctrine. The next sentence in the opinion reads: “The Mississippi Supreme Court in defining the circumstances under which such liability will be imposed, has subscribed to the negligent entrustment definition set out in the Restatement of Torts, Second.” Id. The opinion goes on to provide the Restatement definition of negligent entrustment and applies § 390 to the letter. In fact, the opinion makes it clear that the Restatement definition requires some action on the part of the supplier, stating that “It may be conceded that the record contains some evidence that would tend to suggest that [the alleged supplier of the chattel] did not enjoy a right of possession or control over the vehicle of a sufficient force to uphold a finding that he had affirmatively exercised that power to entrust the operation of the vehicle to [the third party].” Id. at 493(¶ 20) (emphasis added).
¶ 7. Further contradicting Carley’s argument is this Court’s decision in Harrington v. L & B Wood, Inc., 883 So.2d 591 (Miss.Ct.App.2004). In that case, Kendall Daughdrill, without permission, drove a loader off L & B’s lot in an attempt to retrieve his truck from a nearby ditch. After Daughdrill positioned the loader so that it blocked an entire lane of travel on the highway, Harrington’s automobile collided with the loader. Harrington brought suit against L & B on a theory of negligent entrustment, and we affirmed the entry of summary judgment against him. Central to this Court’s analysis was the fact that Daughdrill’s use of the loader was non-permissive. We stated:
We agree with the trial court that, even accepting all of Harrington’s contentions as true, they would not, as a matter of law, support the proposition that his unilateral act of removing L & B’s equipment for his own use without any effort to contact a company representative and without any evidence that this was a customary or accepted practice ac *1263 quiesced in by L & B could arguably be considered to be permissive.
Id. at 593-94(¶ 11) (emphasis added) (internal page numbers omitted). Our reasoning in Harrington emphasizes that in order for a claim of negligent entrustment to lie, the defendant must have engaged in an affirmative act, such as granting permission, in order to “supply” the chattel to a third party. Carley has failed to provide any authority that holds otherwise.
¶ 8. The record makes it clear that Bullock Brothers did not “supply” Gary Bullock with the dump truck for his use on the night of October 16, 1996. The uncontra-dicted evidence, in fact, shows that Gary Bullock broke into the office of Bullock Brothers in order to take the keys to the truck. Considering the evidence in the light most favorable to Carley, we are unable to find that Bullock Brothers “supplied” Gary Bullock with the dump truck as contemplated by Sligh. Accordingly, we find that because Carley failed to establish a prima facie case of negligent en-trustment, the trial court erred in denying Bullock Brothers’s motion for JNOV.
¶ 9. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.

. Gary’s uncle, Lloyd Bullock, testified that when he visited the office three days after the incident, it appeared that someone had broken through the side of the office. He testified that the door had in fact been barred shut at the time. Furthermore, Gary Bullock stated in a sworn affidavit that he had broken into and illegally entered the office.